UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICIA MARY RIEDL,

      Plaintiff,

v.                                            Case No. 05-C-0028

PREVEA CLINIC, INC.,

      Defendant.

## DECISION AND ORDER

Plaintiff Patricia Mary Riedl sued Defendant Prevea Clinic, Inc., for violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff alleges that defendant discriminated against her in the terms and conditions of her employment and ultimately terminated her employment because of her sex and because she complained about sex discrimination. Defendant has moved for summary judgment. For the following reasons, its motion will be granted.

### FACTS

The parties agree on the following facts. Defendant provides medical services, including psychiatric and psychological counseling, through a division known as Prevea Clinic Behavioral Care. (DPFOF ¶ 2.) Defendant employed plaintiff as an Advanced Practice Nurse Practitioner (APNP) from September 9, 2002, until May 30, 2003. (DPFOF ¶ 1.) Plaintiff was the only APNP employed by defendant at that time. (DPFOF ¶ 6, 11.) Her duties included reviewing files of patients, prescribing drugs or refilling prescriptions, and maintaining a clientele of counseling patients. (DPFOF ¶ 9.)

In February 2003, plaintiff's supervisors challenged plaintiff for failing to keep her medical files up to date and for keeping the files of clinic patients, some of whom were not her patients, in her office. (DPFOF ¶ 14.) The supervisors continued to counsel plaintiff regarding her record keeping problems until her termination. (DPFOF ¶ 15.) However, plaintiff continued to have difficulty keeping her files up to date. (DPFOF ¶ 16.) She also had difficulty seeing the number of patients required by her employer. (*Id.*)

On May 9, 2003, plaintiff delivered a written letter to Deborah Mauthe, defendant's director of human resources, Linda Schwallie, plaintiff's supervisor, and Dr. Thomas Huffer, defendant's corporate compliance officer, in which plaintiff complained that she was "subject to a higher standard of performance than [her] male co-workers." (PPFOF ¶ 5; Riedl Aff., Ex. E.) Plaintiff identified Schwallie as the perpetrator of this discrimination. (*Id.*) After speaking to plaintiff and Schwallie, Mauthe determined that plaintiff's complaint was unfounded. (Riedl Aff., Ex. G.) Mauthe scheduled a meeting with plaintiff and Schwallie for May 27, 2003, to discuss plaintiff's "areas for development." (*Id.*)

On May 27, 2003, plaintiff met with Mauthe and Schwallie. When Mauthe and Schwallie confronted plaintiff with complaints about her performance, plaintiff reacted hostilely and left the meeting. (DPFOF ¶ 24.) Defendant terminated plaintiff's employment on May 30, 2003. (DPFOF ¶ 25.) Plaintiff contends that defendant discriminated against her in the terms and conditions of her employment on the basis of her sex. Plaintiff also contends that she was disciplined and ultimately fired because of her complaints about such sex discrimination. Defendant asserts that it terminated plaintiff because of her poor performance and her insubordination.

2

Case 1:05-cv-00028-WCG   Filed 07/10/06   Page 2 of 8   Document 31

**DISCUSSION**

Under the Federal Rules of Civil Procedure, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As *Celotex* makes clear, the burden that each party carries with respect to a motion for summary judgment under the federal rules varies significantly depending upon which party bears the burden of proof at trial on the issue upon which summary judgment is sought. Where the party seeking summary judgment does not bear the burden of proof at trial on any element of the claim, it is enough that it inform the court of "the basis of its motion and identif[y] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. There is no requirement that a moving party who does not bear the burden of proof establish that the element does not exist. In other words, a moving party who does not have the burden of proof

3

at trial, (usually the defendant), is not required to prove a negative in order to make a prima facie showing for summary judgment. *Id.*

Once such a showing is made, however, the nonmoving party who does have the burden of proof at trial, (usually the plaintiff), must respond. In the face of a properly supported motion for summary judgment by the defendant, the plaintiff must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. Moreover, the party that bears the burden of proof at trial must show that it has admissible evidence to support its claim:

> When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R. Civ. P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality–either admissible documents or attested testimony, such as that found in depositions or in affidavits–demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms and conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may meet her *Celotex* burden on summary judgment by

4

producing direct evidence that the defendant took an adverse employment action against her because of her sex or in retaliation for her complaint of sex discrimination. If that is not possible, the plaintiff can still prove her case under the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This requires plaintiff to "raise an inference of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly-situated male employees." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). When the plaintiff claims retaliation, she must show that "[s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Once plaintiff makes out a prima facie case, the burden shifts to her employer to present a legitimate reason for the adverse employment action. *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999). If the employer does this, the plaintiff then has an opportunity to show that the employer's proffered, legitimate reason is actually a pretext for illegal discrimination.[1] *Id.* "If the defendant presents no evidence in response [to the plaintiff's prima facie showing], the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Stone*, 281 F.3d at 644.

---

[1] Because the second prong of the *McDonnell-Douglas* test and the pretext showing involve essentially the same inquiry, courts often merge them analytically. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998).

5

Plaintiff offers no direct evidence that either her sex or her complaint of sex discrimination motivated defendant's actions. Rather, she seeks to raise an inference of discrimination under the burden-shifting test derived from *McDonnell-Douglas*. However, her case founders at the second prong of the *McDonnell-Douglas* test. Plaintiff concedes that she had difficulty keeping her records and seeing the number of patients required by her employer. (DPFOF ¶ 16; Riedl Dep. at 27-35, 60.) She also concedes that she walked out of a meeting with her supervisors. (DPFOF ¶ 24; Riedl Dep. at 75-77.) Finally, she concedes that defendant terminated her for these reasons. (DPFOF ¶ 25.) In light of this, the court must conclude that plaintiff was not meeting defendant's legitimate employment expectations, and that defendant had a legitimate, non-pretextual reason for discharging her.[2]

Attempting to forestall this conclusion, plaintiff points out that in February of 2003 she received a positive evaluation from Schwallie with regard to aspects of her job performance such as "[c]ommunicat[ing] appropriately with staff" and "[f]ollow[ing] behavioral care clinical guidelines." (Riedl Aff., Ex. B.) However, that same evaluation identifies needs for improvement in the areas of "[a]ssum[ing] responsibility for own behavior," "[m]eet[ing] behavioral care program production standards," "[d]ictation and medical record[s] reflect[ing] timely, appropriate,

---

[2]Plaintiff also fails to present any evidence from which a jury could conclude that similarly situated male employees were treated more favorably as required under the fourth prong of the *McDonnell-Douglas* framework. In fact, she seems not to recognize that it is her burden to do so. She states: "Lastly, the defendant has failed to show the existence of any male co-workers who were discharged, or who even received any comparable negative action from the Defendant in the terms and conditions of employment." (Pl.'s Br. at 9.) Of course, it is the plaintiff's burden to show she was treated less favorably than similarly situated male employees under Title VII. *Whittaker v. Northern Ill. U.*, 424 F.3d 640, 647 (7th Cir. 2005). The fact that she was the only Advanced Practice Nurse Practitioner employed by Prevea at the time may explain why she has failed to present any evidence on this essential element of a prima facie case.

6

informative notes," "[r]espect[ing] schedule and mak[ing] a best effort to stay on time," and "work patterns and habits [being] complimentary [sic] to behavioral care program work flow." (*Id.*) Plaintiff's performance evaluation thus supports rather than rebuts defendant's assertion that plaintiff was failing to meet defendant's legitimate performance expectations.

Plaintiff also proffers a handwritten note from Schwallie, dated March 20, 2003, which states in relevant part:

> Your charts as you are completing them are "looking good." I believe intakes you have done subsequent to the date of 9/17 are more condensed in appropriate ways.

(Riedl Aff., Ex. D.) Plaintiff was challenged for failing to complete charts and for leaving charts in her office (risking compromises in patient confidentiality), not for completing her charts incorrectly. (Schwallie Aff., Ex. B.) This note, like plaintiff's evaluation, merely shows that plaintiff was meeting (or making progress toward meeting) some of defendant's legitimate expectations. It does nothing to rebut defendant's evidence that plaintiff failed to complete charts in a timely manner, improperly kept patient files in her office, saw too few patients, was insubordinate at the May 27 meeting, and was fired as a result.

Finally, plaintiff points out that the May 27 meeting, at which Mauthe and Schwallie criticized her performance, and her May 30 termination closely followed her May 9 letter complaining that Schwallie was discriminating against her on the basis of her sex. "[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 644 (collecting cases). Plaintiff offers nothing more, and the court therefore concludes that a trial is unnecessary.

7

## CONCLUSION

For the foregoing reasons, the court concludes that defendant is entitled to summary judgment on plaintiff's claims.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Docket #15) is hereby **GRANTED.** The clerk of court shall enter judgment accordingly.

Dated this   10th   day of July, 2006.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge